# NATHANIEL NORTON

*v.*

# JOHN A. COLBY

1. DEMURRER. Where a plea of the statute of limitations is interposed, the question, whether there is any statute barring the action should be raised by demurrer to the plea.

2. LIMITATIONS—*assumpsit upon a note made out of this State.* An action of assumpsit was brought September 1, 1866, upon a promissory note given out of this State, bearing date February 19, 1835, and falling due in three years from date: *Held*, that the action was barred, under the limitation act of 1827, that act still being in force at the time the action was brought.

3. SAME—*effect of acts of* 1845 *and* 1849 *upon the act of* 1827. The act of 1827, was not repealed, but was re-enacted, by the Revised Statutes of 1845, and the proviso to the 4th section of the act of November, 1849, directing that in all actions instituted upon causes of action arising during the period in which the act of 1845 was in force, shall be the rule of limitation and adjudication, is construed as meaning the act of 1827; and that proviso is not affected by the act of 1851, except so far as concerns actions which accrued while the act of February, 1849, was in force, and such as accrued before the act of February, 1849, went into operation, and for the barring of which there was no previous statute.

4. FORMER DECISIONS. The language of the opinion in the case of *Campbell* v. *Harris*, 30 Ill. 395, is too broad, if it is to be construed as meaning that no promissory note given out of this State, and maturing prior to the act of February, 1849, and since the act of 1827, is barred by any act of limitation in force in this State.

5. NEW PROMISE—*what sufficient to take a case out of the statute of limitations.* A party against whom it was claimed some promissory notes were held in another State, was spoken to about them by a person who had been written to on the subject, who was asked by the alleged debtor if he had the notes, and he said he had not. The debtor then said there were no notes against him; that he paid his notes; that if the agent had any notes against him, or anybody, he would pay them. The agent then said: "I will send for the notes." The debtor answered, "You can; if you produce any notes against me I will pay them." In another conversation, the debtor, upon being shown the notes, acknowledged he had executed them; that they had not been paid, and were still due, and when asked what he would do about them, started away and said he could not be detained then: *Held*,

that these conversations, taken together or separately, were insufficient to show a new promise, so as to take the case out of the statute of limitations.

6. The new promise, to be available, must be of such a character as clearly to show a recognition of the debt, and an intention to pay it, thus waiving the protection of the statute; but where the entire language of the debtor rebuts the presumption of an intention to pay, the bar of the statute is not lost.

7. A promise by a person to pay all the notes that could be produced against him, accompanied by an averment that he owed none, and none could be produced, does not amount to a promise to pay any particular note, or a recognition of its validity; and the promise or acknowledgment, to be binding, must have special reference to the debt in controversy.

8. Moreover, in this case, the agency of the person with whom the debtor had the conversation, did not clearly appear, and if he was then a stranger to the notes, it was immaterial what the debtor said to him; it could not amount to a binding promise.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. MILLER, VAN ARMAN & LEWIS, for the appellant.

Mr. MELVILLE W. FULLER and Mr. S. K. DOW, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of assumpsit, brought September 1, 1866, upon two promissory notes, bearing date February 19, 1835, and falling due in two and three years from date. The defendant pleaded, first, the general issue; second, that he did not promise within sixteen years before the commencement of the suit; and third, that he did not promise within five years. The plaintiff replied to the special pleas, a new promise. Issue was joined, and the jury found a verdict for the plaintiff, upon which the court pronounced judgment, and the defendant appealed.

The appellee insists that there is no statute of limitations barring this action, and cites *Campbell* v. *Harris*, 30 Ill. 395. This question should have been raised by demurrer to the pleas. The position, however, in itself, is not tenable. In the case cited, the plea set up a limitation of the action by virtue of the act of February 10, 1849. The plea was undoubtedly bad, as held by the court, but the language of the opinion is too broad if it is to be construed as meaning that no promissory note given out of this State, and maturing prior to the act of February, 1849, and since the act of 1827, of which the law of 1845 was merely a re-enactment, is barred by any act of limitation in force in this State. The proviso to the 4th section of the act of November, 1849, directs that the act of 1845 and the act of February, 1849, "in all actions instituted upon causes of action arising during the period in which said laws were respectively in force, shall be the rule of limitation and adjudication," and this proviso is not affected by the act of 1851, except so far as concerns actions which accrued while the act of February, 1849, was in force, and actions accruing before the act of February, 1849, went into operation, and for the barring of which there was no previous statute. The act of 1845 referred to in the proviso to the act of November, 1849, must be construed as meaning the act of 1827, of which, as already stated, the act of 1845 in the Revised Statutes of that year was a simple re-enactment, and by that act this action of assumpsit was barred, on one of these notes, in 1842, and on the other in 1843. The bar to this action then became complete, and was not affected by any subsequent legislation. An action of debt would have been barred on these notes in 1853 and 1854, respectively, under the proviso in the act of November, 1849. Or, if the act of 1827 could be considered as repealed by the act of 1845, which it was not, then the bar to an action of debt on these notes, counting from 1845, would have been complete in 1861. As showing that the act of 1827 was not repealed by the Revised Statutes of 1845, we refer to the chapter entitled "Revised

*Opinion of the Court.*

Statutes," section 41, in which the operation of existing limitation laws is expressly saved.

The evidence of a new promise in this case, as given by the plaintiff himself, was as follows :

"I am plaintiff in this suit. Know defendant by sight. I have seen the notes in suit before. They were sent to me from William Webster, son of David Webster, of Maine, endorsed to me for collection. Two years ago last June, I think, I called on Mr. Norton and told him I received a letter from Maine, from Mr. Webster, about some claims against him for land, given to Webster & Burnham. He then asked me if I had the notes, and I told him I had not. He then said to me there were no notes against him ; that he paid his notes ; that if I had any notes against him, or anybody, he would pay them. I said to him : 'I will send for the notes.' He says : 'You can ; if you produce any notes against me, I will pay them.' That was at his house, on the door of the stoop, a year ago last June. I sent for them and then handed them to Mr. Dow, and told him the conversation I had had with Mr. Norton about them."

This was in June. In the following August the defendant, in consequence of a note from the attorney of plaintiff, called at his office, and what occurred at that interview is thus related by one of plaintiff's witnesses :

"I saw Mr. Norton at your (Mr. Dow's ) office in August, 1866. These notes were spoken of. You showed them to him ; he took one note and you had the other, and you read the other one to him, and asked him if that was his signature. He said yes, it was ; and you asked him if the notes had been paid, and he said they hadn't. You asked him if the notes were still due at the time. He handed it back to you and said : 'Yes, yes, yes, yes,' You asked him what he would do about them. He started to go, and he says : 'You musn't

detain me now, for the women folks are down at the door waiting for me.' My women folks, I believe he said."

This was all the evidence of a new promise.

Whether these conversations are taken together or separately, they are manifestly insufficient to show a new promise. As stated by the supreme court of Pennsylvania, in *Suler* v. *Shuler*, 10 Harris, 310, the statute of limitations is a bar, unless it has been waived by failure to plead it, or by matter *in pais*, like a new promise, and when the latter is relied upon, it must be clearly shown that the waiver has had respect to the very claim in suit. In *Bell* v. *Morrison*, 1 Pet. 351, the court held the following language:

"If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences which may affect different minds in different ways, we think they ought not to go to a jury as evidence of a new promise to revive the cause of action."

In *Keener* v. *Crull*, 19 Ill. 191, this court spoke of the identification of the debt as the first condition of a new promise. On this point, see also *Burr* v. *Burr*, 26 Penn. (2 Casey) 284, and *Moore* v. *Bank of Columbia*, 6 Pet. 86.

On this whole subject a just reaction has taken place against the rulings of Lord MANSFIELD, which went so far to neutralize the beneficial purposes of the law. The modern doctrine as laid down by this court in *Parsons* v. *N. Ills. Coal and Iron Co.* 38 Ill. 433, is, that there must be either an express promise, or a conditional promise, with performance of the condition, or such an unconditional admission of the justice of the debt as fairly to imply an intention and promise to pay it. The promise or acknowledgment must, it is plain, have special reference to the debt in controversy. It would be a contradiction to say that a promise by a person to pay all notes that could be produced against him, accompanied by an

averment that he owed none, and none could be produced, amounted to a promise to pay any particular note, or a recognition of its validity. So far from being a promise to pay any particular note, or a recognition of its validity, it is the very reverse. It is, as to any particular debt, a refusal to promise and a denial of liability. It is the same as saying, in reference to a particular debt: "I would pay it if it were just, but it is not just, and I will not pay it." It would be difficult to hold this to be either a promise or an acknowledgment.

This was the substance of the first conversation in the present case. The defendant said he would pay any notes that plaintiff would produce against him, but at the same time said there were none against him. In this language there is certainly neither an express nor conditional promise to pay the debt that plaintiff had mentioned, nor an acknowledgment that it was due. On the contrary, the defendant denied its existence. In the case of *Goodwin* v. *Buzzell*, 35 Vt. 9, the alleged debtor denied the justice of the debt, but said to the plaintiff's attorney: " If Goodwin will swear to that account I will pay it." And a few days later: "I do not think the account is just, but if it is just I will pay it." The court held, this language, so far from taking the case out of the statute, rebutted all intention of promising. In *Moore* v. *Stevens*, 33 Vt. 308, the defendant admitted the account was just when it accrued, but claimed he had paid it, and at the same time promised payment if he did not prove he had paid it. He made no proof of this kind, but the court held this was not such a conditional promise as would take the case out of the statute, as it was accompanied with a denial of liability. The case at bar is similar in principle. The language of the defendant can not be construed as a conditional promise to pay, because, by denying the existence of the debt, he repudiated any idea or intention of payment. When, after denying the existence of any notes against him, he said: "If you produce any, I will pay them," he intended rather to strengthen

the force of his denial, and express the strength of his conviction that he had no notes outstanding, than to promise payment of a debt whose existence he denied. The promise, to be available, must be of such a character as clearly to show a recognition of the debt, and an intention to pay it, thus waiving the protection of the statute. A promise, for example, to pay as soon as the debtor has made a specified sum of money, or when a specified event has happened, are promises which recognize the existence of the debt, and show an intention to pay on the happening of a condition, and when such condition has occurred, the debt is recoverable. We understand the true rule to be, that where the entire language of the debtor rebuts the presumption of an intention to pay, the bar of the statute is not lost. 1 Smith's L. Cases, 869, Notes to *Whitcomb* v. *Whiting.*

We infer, moreover, from the evidence, that at the time of the first conversation the plaintiff had merely received a letter of inquiry in regard to the defendant, and his liability on the notes, and had not then been employed to collect them, as he says they had not then been sent to him. His agency at that time is not made clearly to appear, and if he was then a stranger to the notes, it was immaterial what the defendant may have said to him, under the ruling in *Keener* v. *Crull*, 19 Ill. 191.

The second conversation was of little import. The defendant, in answer to a question whether the notes were due, answered yes, and when asked what he was going to do about it, said he must not be detained then. This interview, like the other, rebuts all idea of a promise or intention to pay, and the more clearly, if taken in connection with the first conversation when the existence of the notes was denied. As was said by this court in *Ayers* v. *Richards*, 12 Ill. 148, a promise can not be implied from an admission that a debt is due, if any thing is said or done at the time rebutting the presumption of a promise to pay.

We remark, in conclusion, that these notes were given more than thirty years before the commencement of this suit. The defendant, for twenty years, as appears from the evidence, has been a resident of Chicago, and has often returned to the State of Maine, where these notes were given, yet no suit has been brought, until the institution of the present. The evidence upon which the validity of the notes depends, has doubtless gone with the dead, or faded out of the memory of the living. With all these presumptions against them, the evidence must be very clear and satisfactory to overcome the bar of the statute. So far from being so, we regard it as absolutely rebutting the idea of an intentional promise. The verdict should have been set aside.

In the view we have taken of the case, it is unnecessary to discuss the instructions. So far as they conflict with this view, they can be modified in the event of another trial.

*Judgment reversed.*